The important question, whether the mortgagee of Smith can be considered as a third party, in the legal sense, is slipped over, by the opposite counsel, very smoothly. He tells us, laconically and confidently, that whoever was not a party to the deed, must be considered under the denomination of a third person. Then the heirs, or the legatees, or the vendees of Smith, as well as his mortgagees, would be third parties : and he who has no title at all, or but an imperfect or conditional one, to an estate, may, nevertheless, transmit that estate by a good title to another. The idea of a third party does, ex vi terminorum, exclude the principal party, his representatives and ayants-cause, that is all those who claim immediately from or through him.
I am not surprised, that the gentleman finds the definition of mortgage in our Civil Code to be an unfortunate one. It is so, for his cause at least. From this definition, as the counsel himself understands it, our claim, whatever it may be, cannot be considered as a simple conventional mortgage; for the vendee had no right or property in the estate sold, until *632 he accepted of the sale of it. Neither, according to the definition (C. C. 454, art. 15) can our claim, as it is represented by the adverse party, be a legal mortgage; a legal mortgage being that which proceeds from the law, without any express covenant of the parties—and our claim being expressly covenanted for, and reserved by the parties themselves. What then can our claim be?—a privilege or privileged mortgage, and nothing else.
It is too late now for the parties to object, that we have proceeded on our privileged mortgage, as if it had been an ordinary conventional mortgage. In whatever manner the estate in question might have been sold, whether at our suit, or by the syndics of Smith, we should have been entitled to our privilege on the proceeds. But the counsel expressly state, that they do hot wish to set aside the sale that has been made : neither do we.
Of the true meaning of the word lien, no doubt can be entertained. If the legislature had enacted, that all liens whatever, not duly recorded, should be null and void,&c. I presume, all privileges like ours would have been included in that enactment. If the legislature intended to do, what it is erroneously said they *633 have effectually done, they would have ordained, either that all liens whatever,—or all liens having the effect of a legal or privilege mortgage,—not recorded, &c. shall be null and void. But our legislature never did, and never intended to do any such thing. They could not do this without destroying all the privileges given on real property for funeral charges, law charges, charges for medical attendance, for salaries of persons hired, for subsistence, et cetera; privileges, most of which it would be impracticable to record in the manner the act prescribes for liens having the effect only of a legal mortgage. The construction, contended for, of the last part of the first section of the act of 1813, cannot be maintained without depriving all those entitled to the privileges above mentioned of their liens on the debtor’s immoveable property.— But it is already well settled, that no such effects have been produced by that act. This court has so decided in the cases I have already cited; and the legislature have confirmed the principle of the decisions in those cases, by modifying, in the act of 1817, the law in respect to one particular kind of privilege, to wit, the builder’s privilege, when his *634 claim should exceed 500 dollars. The act of 1815 required the registry of all liens having the effect of a legal mortgage. The act of 1817 requires the registry of one, and only one species of lien having the effect of a privilege mortgage. If the legislature, in 1817, intended to require the registry of any other kinds of privileges, or liens having the effect of a privilege mortgage, they would have expressly designated and enumerated them.— This provision for the record of one sort of privilege, or privileged mortgage, on immoveable property, is a decided exclusion of the legal necessity of recording any others. And thus, as one of the counsel very justly observes, we find the legislature, from time to time, legislating with the view of closing the door against the evils of concealed liens : yet at no time, though they have had many years to meditate on the subject, have they legislated in this manner respecting the vendor's, or the physician’s, or the lawyer’s privilege on the immoveable as well as on the moveable property of their debtors.

The court took time to advise.